# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT ELLIS, | CASE NO. 1:04-cv-5263 TAG |
| Plaintiff, | MEMORANDUM DECISION AND ORDER ON PLAINTIFF'S APPEAL FROM ADMINISTRATIVE DECISION |
| v. | ORDER REMANDING CASE FOR THE PAYMENT OF BENEFITS |
| JO ANNE B. BARNHART, Commissioner of Social Security, | ORDER DIRECTING THE CLERK TO ENTER JUDGMENT IN FAVOR OF |
| Defendant. | PLAINTIFF AND AGAINST DEFENDANT |
| _____/ | |

Plaintiff Robert Ellis ("Claimant" or "Plaintiff") seeks judicial review of an administrative decision denying his claim for disability benefits under the Social Security Act ("Act").  Pending before the Court is Claimant's appeal from the administrative decision of the Commissioner of Social Security ("Commissioner").  Claimant filed his complaint on February 10, 2004, and his opening brief on September 22, 2004.  The Commissioner filed her opposition to the appeal on November 4, 2004.  Claimant filed a reply brief on December 7, 2004.

Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, the parties consented to proceed before a United States Magistrate Judge, and, by an order dated May 24, 2004, this action was assigned to the United States Magistrate Judge for all further proceedings.

///

1

1

## JURISDICTION

2 _____Claimant protectively filed an application for Disability Insurance Benefits ("DIB") on

3 September 12, 1997, alleging a disability onset of July 31, 1995,[1] due to an injury to his lower back,

4 hearing problems, a right thumb impairment and problems with his right knee.  (Administrative

5 Record ("AR") 88-91, 111, 114, 130).  The application was denied initially and on reconsideration.

6 On December 3, 1998, Claimant appeared before Administrative Law Judge ("ALJ") James N.

7 Baker, at which time he heard testimony from Claimant and a vocational expert.  (AR 31-67).  On

8 January 27, 1999, the ALJ issued a decision finding that Claimant was not disabled.  (AR 20-26).

9 After the Appeals Council denied a request for review on July 6, 2001 (AR 6-8), Claimant appealed

10 to the District Court pursuant to 42 U.S.C. § 405(g).  On March 4, 2002, the District Court remanded

11 the case for further proceedings.  (AR 399-402).  Pursuant to the court-ordered remand, the Appeals

12 Council vacated ALJ Baker's decision and remanded the case for a new hearing.  (AR 404-405).

13 On June 5, 2003, Claimant appeared before ALJ James M. Mitchell, at which time he heard

14 testimony from Claimant and a vocational expert, Susan Moranda.  (AR 340-394).  On December 5,

15 2003, ALJ Mitchell issued a decision finding that Claimant was not disabled.  (AR 325-335).  The

16 ALJ's decision became the final decision of the Commissioner, which is appealable to the District

17 Court pursuant to 42 U.S.C. § 405(g), and Claimant subsequently filed this action for judicial review

18 pursuant to 42 U.S.C. § 405(g).

19

## STATEMENT OF FACTS

20 The facts have been presented in the administrative hearing transcript, the ALJ's decision, the

21 briefs of both Claimant and the Commissioner and will only be summarized here.  Claimant was

22 born on March 12, 1936, making him 67 years old on the date of ALJ Mitchell's decision.  (AR 344,

23 335).

24 Claimant indicated he is a high school graduate, has taken one semester of college and has 41

25 years of on-the-job training in mechanics.  (AR 344).  Claimant stated that the last job he held was as

26 a mechanic II on oilfield industrial engines and pumping units.  (AR 346).  He indicated he did this

27

28 [1]At his remand hearing, Claimant's disability onset date was subsequently amended to April 12, 1996.  (AR 392).

2

type of work for over 40 years.  (AR 347).  Claimant testified that he stopped working in July of 1995 because he decided to accept an offer of early retirement.  (AR 345).  He also stated that, after moving in 1995, there was no similar type of work available in the area he lived in.  (AR 349). Claimant testified that he "drew some state disability" and had income from taking early retirement during the period of time from 1995 to 1998.  (AR 348-349).  He stated that the date he indicated that he became disabled, July 31, 1995, was asserted because that was his retirement date.  (AR 350). Claimant explained that he sustained an injury to his back in 1992 but continued working after the injury until the offer for early retirement was extended.  (AR 350-351).  He indicated that, since the 1992 back injury, he simply worked through the pain.  (AR 377).  Nevertheless, Claimant testified he believed he could not have continued to work at his job as safely as he should have been during the period of time from 1995 to 1998. (AR 374).

During the period of time from 1995 to 1998, Claimant testified that he generally got out of bed at six or seven o'clock in the morning and went to bed about 9:00 p.m.  (AR 352).  Claimant lived in a house with only his wife, preparing his own meals once or twice a day, washed dishes three or four times a week and did some vacuuming.  (AR 352-353).  Claimant indicated that he dusted about once a week, helped with doing the laundry about once a week and only went to the grocery store about once a month.  (AR 354).  Claimant testified that he spent probably four hours a day watching television and two to three hours a day reading.  (AR 354-355).  He further testified that he would visit with his wife's children about once a month, went fishing about twice a month, did a little gardening and took care of some chickens he had at the time.  (AR 355-356).  He stated that he watered and cut his lawn as well.  (AR 357).  Claimant later testified that he could only sustain these daily activities for about 30 minutes before having to rest or take a nap.  (AR 372-373).  He further stated that he needed to take daily naps.  (AR 372).

Claimant testified that, during the time period of 1995 to 1998, he was able to stand for two to three hours continuously and could sit about 30 minutes continuously.  (AR 362-363).  He indicated he could walk twelve blocks at one time.  (AR 363).  He stated that he would have difficulty holding onto small objects due to his "stiff right thumb," but that he was able to pick items up and could write with a pen or pencil.  (AR 364-365).  Claimant testified that he also had problems

1   with hearing but did not use any kind of hearing device.  (AR 365).  He also stated that, although his

2   doctors had asked him two or three times to take antidepressant medication, he did not believe that

3   he was depressed.  (AR 382).

4        Vocational expert Susan Moranda also testified at the administrative hearing.  (AR 383-393).

5   Ms. Moranda reported that Claimant's past relevant work consisted of work as an oilfield equipment

6   mechanic which is considered medium exertion work but was performed at the heavy exertional

7   level as well.  (AR 384).

8        The ALJ asked Ms. Moranda if there were jobs available for an individual with Claimant's

9   age during the relevant time period (60 years old), education, and work experience combined with

10  being limited to lifting, pushing and pulling 25 pounds frequently and 50 pounds occasionally, being

11  able to walk, stand, stoop and bend frequently and being able to sit occasionally.  (AR 384-385).

12  Given this hypothetical, Ms. Moranda stated that the individual could not perform Claimant's past

13  relevant work, but that there were a significant number of unskilled, medium exertion jobs, such as

14  dishwasher, car washer and hand packager, with which the individual could perform.  (AR 385-387).

15       The ALJ next asked Ms. Moranda if there were jobs available for an individual with

16  Claimant's age, education, and work experience combined with having the following non-exertional

17  limitations:  unlimited attention, concentration, understanding and memory; vision is diminished but

18  correctable; hearing and reaching are unlimited; slightly limited in fine and gross manipulation with

19  the right dominant feature; slightly limited in the ability to do simple routine tasks; no environmental

20  restrictions; unlimited contact with the public; occasional supervision; and pain level slight to

21  moderate.  (AR 387).  Given these additional limitations, Ms. Moranda indicated there would be a 40

22  percent erosion of the previously mentioned medium exertion jobs.  With a modification to the

23  above limitations to moderately limited in fine manipulative ability with the right dominant feature,

24  Ms. Moranda indicated there would be a 100 percent erosion of the previously mentioned medium

25  exertion jobs.  (AR 387).

26       The ALJ next asked Ms. Moranda if there were jobs available for an individual with

27  Claimant's age during the relevant time period (60 years old), education, and work experience

28  combined with being limited to lifting, pushing and pulling 10 pounds frequently and 20 pounds

4

1   occasionally, being able to walk and stand frequently and being able to sit, stoop and bend

2   occasionally.  (AR 387).  Given this hypothetical, Ms. Moranda stated that the individual could not

3   perform Claimant's past relevant work, but that there were a significant number of unskilled, light

4   exertion jobs, such as small parts assembler, hotel/motel housekeeper, and hand presser, with which

5   the individual could perform.  (AR 387-388).

6          The ALJ next asked Ms. Moranda if there were jobs available for an individual with

7   Claimant's age, education, and work experience combined with having the following non-exertional

8   limitations:  unlimited attention, concentration, understanding and memory; vision is diminished but

9   correctable; hearing is unlimited; reaching is unlimited; fine and gross manipulative abilities with

10  respect to the right dominant feature is slightly limited; slightly limited in the ability to do simple

11  routine tasks; no environmental restrictions; unlimited contact with the public; occasional

12  supervision; and pain level slight to moderate.  (AR 388-389).  Given these additional limitations,

13  Ms. Moranda indicated there would be a 40 percent erosion of the previously mentioned light

14  exertion jobs.  With a modification to the limitations to moderately limited in fine manipulative

15  ability with the right dominant feature, Ms. Moranda indicated there would be a 100 percent erosion

16  of the previously mentioned light exertion jobs.  (AR 389).

17         The ALJ also asked Ms. Moranda if there were jobs available for an individual with

18  Claimant's age during the relevant time period (60 years old), education, and work experience

19  combined with being limited to lifting, pushing and pulling 5 pounds frequently and 10 pounds

20  occasionally, being able to walk, stand, stoop and bend occasionally and being able to sit frequently.

21  (AR 389).  Given this hypothetical, Ms. Moranda stated that the individual could not perform

22  Claimant's past relevant work, but that there were a significant number of unskilled, sedentary

23  exertion jobs, such as cashier II and small parts assembler, with which the individual could perform.

24  (AR 389).

25         Nonetheless, as noted on the record by Claimant's attorney, should Claimant be limited to

26  light or sedentary exertional level work, he would be considered disabled under the Medical-

27  Vocational Guidelines ("Grids") due to his advanced age.  (AR 389-392).

28  ///

5

1       On cross-examination, Claimant's attorney asked Ms. Moranda if Claimant would be able to

2   perform any medium exertion job if he was only capable of working 30 minutes at a time before

3   changing positions from sitting, standing or walking.  (AR 393).  Ms. Moranda testified that

4   Claimant would not be able to do any medium exertion work given this restriction.  (AR 393).

5                          **SEQUENTIAL EVALUATION PROCESS**

6       The Social Security Act defines "disability" as the "inability to engage in any substantial

7   gainful activity by reason of any medically determinable physical or mental impairment which can be

8   expected to result in death or which has lasted or can be expected to last for a continuous period of

9   not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The Act also provides

10  that a claimant shall be determined to be under a disability only if his impairments are of such

11  severity that a claimant is not only unable to do his previous work but cannot, considering claimant's

12  age, education and work experiences, engage in any other substantial gainful work which exists in

13  the national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

14      The Commissioner has established a five-step sequential evaluation process for determining

15  whether a person is disabled.  20 C.F.R. §§ 404.1520, 416.920.  Step one determines if he is engaged

16  in substantial gainful activities.  If he is, benefits are denied.  20 C.F.R. §§ 404.1520(b), 416.920(b).

17  If he is not, the decision maker proceeds to step two, which determines whether a claimant has a

18  medically severe impairment or combination of impairments.  20 C.F.R. §§ 404.1520(c), 416.920(c).

19      If a claimant does not have a severe impairment or combination of impairments, the disability

20  claim is denied.  If the impairment is severe, the evaluation proceeds to the third step, which

21  compares a claimant's impairment with a number of listed impairments acknowledged by the

22  Commissioner to be so severe as to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(d),

23  416.920(d); 20 C.F.R. § 404 Subpt. P App. 1.  If the impairment meets or equals one of the listed

24  impairments, a claimant is conclusively presumed to be disabled.  If the impairment is not one

25  conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines

26  whether the impairment prevents a claimant from performing work he has performed in the past.  If

27  a claimant is able to perform his previous work, he is not disabled.  20 C.F.R. §§ 404.1520(e),

28  416.920(e).  If a claimant cannot perform this work, the fifth and final step in the process determines

1    whether he is able to perform other work in the national economy in view of his age, education and

2    work experience.  20 C.F.R. §§ 404.1520(f), 416.920(f).  See, Bowen v. Yuckert, 482 U.S. 137

3    (1987).

4          The initial burden of proof rests upon a claimant to establish a *prima facie* case of entitlement

5    to disability benefits.  Rhinehart v. Finch, 438 F.2d 920, 921 (9th Cir. 1971).  The initial burden is

6    met once a claimant establishes that a physical or mental impairment prevents him from engaging in

7    his previous occupation.  The burden then shifts to the Commissioner to show (1) that the claimant

8    can perform other substantial gainful activity and (2) that a "significant number of jobs exist in the

9    national economy" which claimant can perform.  Kail v. Heckler, 722 F.2d 1496, 1498 (9th Cir.

10   1984).

11                              **STANDARD OF REVIEW**

12   _____Congress has provided a limited scope of judicial review of a Commissioner's decision.  See,

13   42 U.S.C. § 405(g).  A court must uphold the Commissioner's decision, made through an ALJ, when

14   the determination is not based on legal error and is supported by substantial evidence.  See, Jones v.

15   Heckler, 760 F.2d 993, 995 (9th Cir. 1985); Sanchez v. Secretary of Health & Human Services, 812

16   F.2d 509, 510 (9th Cir. 1987) (two consulting physicians found applicant could perform light work

17   contrary to treating physician's findings).  "The [Commissioner's] determination that a claimant is

18   not disabled will be upheld if the findings of fact are supported by substantial evidence."  Delgado v.

19   Heckler, 722 F.2d 570, 572 (9th Cir. 1983) (*citing* 42 U.S.C. § 405(g)).  Substantial evidence is more

20   than a mere scintilla, Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less

21   than a preponderance.  McAllister v. Sullivan, 888 F.2d 599, 601-602 (9th Cir. 1989); Desrosiers v.

22   Secretary of Health and Human Services, 846 F.2d 573, 576 (9th Cir. 1988).  Substantial evidence

23   "means such evidence as a reasonable mind might accept as adequate to support a conclusion."

24   Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations omitted).  "[S]uch inferences and

25   conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld.

26   Mark v. Celebrezze, 348 F.2d 289, 293 (9th Cir. 1965).  On review, the court considers the record as

27   a whole, not just the evidence supporting the decision of the Commissioner.  Weetman v. Sullivan,

28   877 F.2d 20, 22 (9th Cir. 1989) (*quoting* Kornock v. Harris, 648 F.2d 525, 526 (9th Cir. 1980)).

                                              7

1   It is the role of the trier of fact, not this Court, to resolve conflicts in evidence.  <u>Richardson</u>,

2   402 U.S. at 400.  If evidence supports more than one rational interpretation, the Court must uphold

3   the decision of the ALJ.  <u>Allen v. Heckler</u>, 749 F.2d 577, 579 (9th Cir. 1984).  Nevertheless, a

4   decision supported by substantial evidence will still be set aside if the proper legal standards were

5   not applied in weighing the evidence and making the decision.  <u>Brawner v. Secretary of Health and</u>

6   <u>Human Services</u>, 839 F.2d 432, 433 (9th Cir. 1987).  Thus, if there is substantial evidence to support

7   the administrative findings, or if there is conflicting evidence that will support a finding of either

8   disability or nondisability, the finding of the Commissioner is conclusive.  <u>Sprague v. Bowen</u>, 812

9   F.2d 1226, 1229-1230 (9th Cir. 1987).

10                              **ALJ'S FINDINGS**

11   The ALJ indicated that, at the administrative hearing, Claimant's attorney amended the

12   disability onset date from July 31, 1995 to April 12, 1996, and the date last insured was December

13   31, 2000.  (AR 326).  Therefore, the issue before the ALJ was whether Claimant was disabled during

14   the relevant period of time from April 12, 1996 to December 31, 2000.  (AR 326-327).

15   The ALJ found at step one that Claimant has not engaged in substantial gainful activity since

16   the alleged onset date of April 12, 1996.  (AR 327).  At step two, the ALJ determined that Claimant

17   has severe back and right thumb impairments, but that he does not have an impairment or

18   combination of impairments listed in or medically equal to one of the Listings impairments.  (AR

19   331).  He noted that Claimant also has complained of other conditions; namely, bilateral hearing

20   loss, gastroesophageal reflux disease, problems with his leg, problems with his right testicle, neck

21   pain, a heart condition, high blood pressure, eye problems and hoarseness, but that the evidence of

22   record shows that the alleged impairments were either fairly well controlled or do not impose

23   significant functional limitations.  (AR 329).

24   The ALJ found Claimant's testimony at the hearing about his activities of daily living to be

25   generally credible.  (AR 331).  However, he indicated that Claimant's testimony regarding his

26   disability and inability to do activities on a regular basis was generally not credible.  (AR 331-332).

27   ///

28   ///

8

The ALJ found that Claimant has the residual functional capacity to perform medium exertional work activity which includes the ability to lift and carry 50 pounds occasionally and 25 pounds frequently, to walk, stand, stoop and bend frequently, and sit occasionally.  (AR 333).  The ALJ also determined that Claimant's vision is diminished but correctable, he has slight limitations on fine and gross manipulation of his right dominant hand, his ability to do simple, routine, repetitive tasks is slightly limited, he needs occasional supervision and his pain level is slight to moderate. (AR 333).  The ALJ found that Claimant could not perform his past relevant work as an oil field equipment mechanic.  (AR 333).  However, based on Claimant's residual functional capacity, age, education and work experience, the ALJ concluded that Claimant was capable of adjusting to work that exists in significant numbers in the regional and national economy; specifically, the jobs of dishwasher, car washer and hand packager.  (AR 334).  Accordingly, the ALJ found that Claimant was not disabled within the meaning of the Social Security Act.  (AR 334-335).

## ISSUES

Claimant contends that the Commissioner erred as a matter of law.  Specifically, Claimant contends that:

1. The ALJ erred by rejecting the opinions of three examining physicians and adopting the opinions of state agency non-examining physicians to find that Claimant was capable of performing medium exertion work;

2. By crediting the opinions of the three examining physicians, it is clear that Claimant cannot perform medium exertion work, and the Grids thus direct a finding that he is disabled; and

3. The ALJ erred by failing to present a complete hypothetical question to the vocational expert, one which included all of Claimant's limitations, and by failing to resolve discrepancies between the vocational expert's testimony and the Dictionary of Occupational Titles ("DOT").

The Court must uphold the Commissioner's determination that Claimant is not disabled if the Commissioner applied the proper legal standards and there is substantial evidence in the record as a whole to support the decision.

///

///

9

**DISCUSSION**

Although other contentions made by Claimant in his opening brief may have merit in this case, the undersigned will address only those portions of Claimant's argument that the undersigned believes will lead to a just result in this matter.  Since the undersigned concludes that, on remand, Claimant should be awarded benefits, Claimant is not prejudiced by this process.

**A.  Residual Functional Capacity Assessment**

Residual functional capacity ("RFC") is defined as "what an individual can still do despite his or her limitations."  SSR 96-8p.  Claimant's RFC is not a medical issue, rather it is an administrative finding, dispositive of the case, which is reserved to the Commissioner, and, by delegation of authority, to the ALJ.  SSR 96-5p.  It is thus the ALJ's responsibility to make a RFC determination.  However, in making his finding, the ALJ must consider the whole record and explain how he weighs the medical evidence and testimony.  SSR 96-8p.

The ALJ found that Claimant had the physical RFC to perform medium exertional work activity or that he was able to lift and carry 50 pounds occasionally and 25 pounds frequently.  (AR 333); see, 20 C.F.R. § 404.1567(c).  The ALJ determined that Claimant has slight limitations on fine and gross manipulation of his right dominant hand.  (AR 333).  Claimant's primary contention is that the ALJ's physical RFC determination is unsupported by the evidence of record in this case.  (Court Doc. 10, pp. 11-18).  The undersigned agrees.

In support of Claimant's argument that the ALJ's physical RFC determination is erroneous, he asserts that the ALJ erred by rejecting the opinions of Claimant's examining physicians, Donald R. Schwarz, M.D., Robert England, M.D., and Satish Sharma, M.D.  (Court Doc. 10, pp. 11-18).  Claimant argues that the ALJ erred by inappropriately rejecting the opinions of these three examining physicians and instead relying solely on the opinions of state agency nonexamining physicians when formulating his physical RFC determination in this case.  (Court Doc. 10, pp. 11-18).

The courts distinguish among the opinions of three types of physicians:  treating physicians, physicians who examine but do not treat the claimant (examining physicians) and those who neither examine nor treat the claimant (nonexamining physicians).  Lester v. Chater, 81 F.3d 821, 839 (9th Cir. 1996).  A treating physician's opinion is given special weight because of his familiarity with the

10

claimant and his physical condition.  <u>Fair v. Bowen</u>, 885 F.2d 597, 604-05 (9th Cir. 1989).  Thus, more weight is given to a treating physician than an examining physician.  <u>Lester</u>, 81 F.3d at 830. However, the treating physician's opinion is not "necessarily conclusive as to either a physical condition or the ultimate issue of disability."  <u>Magallanes v. Bowen</u>, 881 F.2d 7474, 751 (9th Cir. 1989) (citations omitted).

The Ninth Circuit has held that "[t]he opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician."  <u>Lester</u>, 81 F.3d at 830.  Rather, an ALJ's decision to reject the opinion of a treating or examining physician, may be *based in part* on the testimony of a nonexamining medical advisor.  <u>Magallanes</u>, 881 F.2d at 751-55; <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1043 (9th Cir. 1995).  The ALJ must also have other evidence to support the decision such as laboratory test results, contrary reports from examining physicians, and testimony from the claimant that was inconsistent with the physician's opinion.  <u>Magallanes</u>, 881 F.2d at 751-52; <u>Andrews</u>, 53 F.3d 1042-43.  Moreover, an ALJ may reject the testimony of an examining, but nontreating physician, in favor of a nonexamining, nontreating physician only when he gives specific, legitimate reasons for doing so, and those reasons are supported by substantial record evidence.  <u>Roberts v. Shalala</u>, 66 F.3d 179, 184 (9th Cir. 1995).

In making his physical RFC determination, the ALJ rejected the opinions of three examining physicians and instead relied on the opinions of nonexamining state agency physicians.  (AR 333). Dr. Dipsia, a nonexamining state agency physicians, indicated on a check-box form,[2] on May 9, 2001, that Claimant is capable of standing, walking, or sitting up to six hours (each) in an eight hour workday and could lift and/or carry 50 pounds occasionally and 25 pounds frequently.  (AR 759, 331).  On August 21, 2001, nonexamining physician Dr. Eskander affirmed Dr. Dipsia's findings. (AR 762).  The nonexamining physicians indicated that Claimant had an unlimited ability to push and/or pull with his upper and lower extremities, no established postural limitations, no manipulative limitations, no visual limitations and no environmental restrictions.  (AR 759-762).  The findings of

---

[2]A check-box form is entitled to little weight.  <u>Crane v. Shalala</u>, 76 F.3d 251, 253 (9th Cir. 1996) (stating that the ALJ's rejection of a check-off report that did not contain an explanation of the bases for the conclusions made was permissible).

Drs. Dipsia and Eskander mirror a September 21, 1997 check-box form report produced by state agency nonexamining physician Wallace D. Campbell, M.D.  (AR 250-257).

According weight to the opinions of Drs. Dipsia and Eskander, the ALJ concluded that Claimant retains the ability to perform a full range of medium exertion work.  (AR 333).  In finding their opinions persuasive, the ALJ noted that, with regard to Claimant's back problems, they provided a rationale for opining that Claimant could lift and carry 50 pounds occasionally and 25 pounds frequently based on a review of the medical evidence concerning Claimant's spine.  (AR 333).  The ALJ, however, discounted their findings regarding Claimant having no manipulative restrictions, because objective evidence supported some loss of function.  (AR 333).

Contrary to the ALJ's conclusion, the state agency physicians' opinions were not supported by the weight of the record evidence.  These nonexamining physician, check-box reports are the only medical evidence of record which support the ALJ's conclusion that Claimant is capable of performing medium exertion work.  The opinions of Claimant's examining physicians, Drs. Schwartz, England and Sharma, provide substantial evidence that Claimant cannot perform the exertional demands of medium work, as determined by the nonexamining state agency physicians. As discussed below, since the ALJ improperly rejected the examining physicians' opinions, and the only record evidence contradicting their opinions is the opinions of nonexamining state agency physicians, the ALJ's physical RFC determination is not based on substantial evidence.

**1. Dr. Schwartz**

The record reveals that examining physician Dr. Schwartz completed a comprehensive evaluation of Claimant on December 16, 1996.  (AR 211-223).  Dr. Schwartz reported that Claimant's treatment history consisted of the following:  a 1981 or 1982 injury to his left knee, torn cartilage, from which he completely recovered following surgery and physical therapy; an August 4, 1992 injury to his lower back from lifting on the job with the pain becoming progressively more severe over time; a February 13, 1995 right thumb injury from striking his thumb with a hammer which has led to increased stiffness and loss of motion in the thumb joint, and; a tendon injury to the right thumb several years prior to the February 12, 1995 injury which left him with residual stiffness following surgery.  (AR 211-212).  Claimant reported that his lower back symptoms improved to

some degree after taking early retirement on July 31, 1995, but he periodically experiences flare-ups associated with activity. (AR 212). Claimant's chief complaints were of "constant lower back pain at a level that interferes with his activities," and a limitation of motion with his right hand and thumb. (AR 212). Claimant noted that sitting one hour, standing thirty minutes, walking fifteen to twenty minutes, or any bending, twisting, pushing or pulling aggravates his back symptoms. (AR 212).

Upon examination, Dr. Schwartz noted tenderness and spasm of the left paracervical and trapezius musculature (AR 213), decreased grip strength with the right (AR 216), tenderness and spasm of the right paralumbar region and tenderness of the lumbosacral area (AR 217), and pain in the lower back, marked at the right paralumbar area with motion to the left (AR 217). Dr. Schwartz also noted increased right lower back pain when Claimant walks on heels and toes. (AR 217). Dr. Schwartz indicated that x-rays dated May 28, 1996, demonstrated that Claimant had a marked degenerative change and spondylosis at the C5-6 level of the cervical spine, and x-rays of the lumbar spine, taken on January 25, 1996, were read as demonstrating minimal retroscoliosis with concavity to the left, with minimal osteoporosis and mild hypertrophic degenerative changes of the lumbar vertebral body margins. (AR 220). He diagnosed Claimant with degenerative disc disease of the lumbar spine, rule out disc herniation, and post avulsion of the flexor tendons of the right thumb with residual restricted function. (AR 220).

Dr. Schwartz's findings as to Claimant's right thumb were as follows: Claimant has no pain in the right thumb, but notes limitation of function; Claimant has lost almost all flexion of the right thumb; Claimant has lost 25 percent of his pre-injury capacity for lifting, carrying, pushing, pulling, grasping, pinching, twisting, and other comparable activities with regards to his right upper extremity; and, based on the description of his work, Claimant would be able to continue working at his job in spite of the right thumb difficulties, having performed this job for a number of years following the injury to his right thumb. (AR 221). He opined that Claimant had reached a permanent and stationary level with regards to his right thumb. (AR 221). He further opined that it was very likely permanent and stationary with regards to Claimant's lower back. (AR 221). However, Dr. Schwartz reserved his findings regarding Claimant's lower back until after Claimant underwent an MRI study of the lumbar spine. (AR 221).

On August 5, 1997, Dr. Schwartz submitted a supplement report after having reviewed additional medical reports pertaining to Claimant.  (AR 207-209).  Dr. Schwartz clarified his initial findings as to Claimant's thumb indicating that the abnormal function of his thumb is indicative of a definite disability, and the fact that Claimant was able to adapt to a great extent and continue with his job in no way suggests that there was no disability.  (AR 208).  With regard to Claimant's lower back impairment, Dr. Schwartz indicated that "the MRI scan report speaks for itself."  (AR 208).  He noted the findings of the MRI revealed minimal broad-based annular disc bulges at L3-4, L4-5 and L5-S1, without evidence of focal disc herniation or spinal stenosis, findings Dr. Schwartz considered were not normal.  (AR 208).

The ALJ determined that Dr. Schwartz's opinions were not persuasive because his findings were not well-supported.  (AR 332).  The ALJ discounted Dr. Schwartz's opinion regarding Claimant's 25 percent loss of pre-injury capacity for lifting, carrying, pushing, pulling, grasping, pinching, twisting and other comparable activities with regards to the right upper extremity, because Claimant was at least able to perform his job from the day Dr. Schwartz indicated he became stationary, until the day he took early retirement, without significant functional limits.  (AR 332).  The ALJ indicated that Dr. Schwartz provided little, if any, evidence of impaired lifting, carrying, pushing, or pulling since Claimant had normal motor strength of the shoulders, elbows and wrists, and Claimant's girth measurements of all parts of his upper extremities were equal.  (AR 332).  The ALJ also found that Claimant's testimony regarding his activities of daily living further reduced the persuasiveness of Dr. Schwartz's opinion.  (AR 332).

Dr. Schwartz' findings were not unsupported as determined by the ALJ in this case.  As noted above, Dr. Schwartz's examination revealed tenderness and spasm of the left paracervical and trapezius musculature (AR 213), tenderness and spasm of the right paralumbar region and tenderness of the lumbosacral area (AR 217), and pain in the lower back, marked at the right paralumbar area with motion to the left (AR 217).  Dr. Schwartz also noted increased right lower back pain when Claimant walks on heels and toes.  (AR 217).  Dr. Schwartz indicated that x-rays dated May 28, 1996, demonstrated that Claimant had a marked degenerative change and spondylosis at the C5-6 level of

///

14

1   the cervical spine, and x-rays of the lumbar spine, taken on January 25, 1996, were read as

2   demonstrating minimal retroscoliosis with concavity to the left, with minimal osteoporosis and mild

3   hypertrophic degenerative changes of the lumbar vertebral body margins. (AR 220). He later noted

4   that the findings of an MRI revealed minimal broad-based annular disc bulges at L3-4, L4-5 and L5-

5   S1, without evidence of focal disc herniation or spinal stenosis, findings he considered were not

6   normal. (AR 208). With regard to Claimant's thumb, Dr. Schwartz's examination revealed that

7   Claimant had decreased grip strength with the right, had lost almost all flexion of the right thumb, had

8   lost 25 percent of his pre-injury capacity for lifting, carrying, pushing, pulling, grasping, pinching,

9   twisting, and other comparable activities with regards to his right upper extremity, and, despite the

10  thumb difficulties, Claimant would be able to continue working at his job, since he performed this job

11  for a number of years following the injury to his right thumb. (AR 216, 221). Dr. Schwartz later

12  clarified that the fact that Claimant was able to adapt to a great extent and continue with his job in no

13  way suggested that there was no disability with his thumb. (AR 208). Accordingly, contrary to the

14  ALJ's conclusion, Dr. Schwartz's opinion was well supported by his examination records and clinical

15  findings.

16          With regard to Claimant's ability to perform his job from the day Dr. Schwartz indicated he

17  became stationary, until the day he took early retirement, without significant functional limits (AR

18  332), Claimant testified that, although he did continue to work, he simply worked through the pain.

19  (AR 377). Moreover, Claimant testified he believed he could not have continued to work at his job as

20  safely as he should have been during this short period of time. (AR 374). As noted by Dr. Schwartz,

21  Claimant adapted, or accommodated for his impairments and limitations, in order to continue with his

22  job. (AR 208). Thus, Claimant's ability to continue performing his work duties, despite his

23  impairments during that time, was not an appropriate basis to find Dr. Schwartz's opinion inadequate.

24          Regarding the ALJ's finding that Dr. Schwartz provided little evidence of impaired lifting,

25  carrying, pushing, or pulling, since Claimant had normal motor strength of the shoulders, elbows and

26  wrists, and Claimant's girth measurements of all parts of his upper extremities were equal (AR 332),

27  Dr. Schwartz's examination revealed that Claimant had decreased grip strength with the right and had

28  lost almost all flexion of the right thumb. (AR 216, 221). Dr. Schwartz also indicated that the fact

that Claimant was able to adapt to a great extent and continue with his job did not suggest that there was no disability with his thumb. (AR 208). Contrary to the ALJ's conclusion, the fact that Claimant had limited use of his right hand as a result of his thumb injury provides evidence of impaired lifting, carrying, pushing, or pulling.

Finally, with regard to the ALJ's finding that Claimant's testimony regarding his activities of daily living further reduced the persuasiveness of Dr. Schwartz's opinion (AR 332), Claimant's testimony as to the activities of daily living was not inconsistent with Dr. Schwartz's findings. Claimant testified that he prepared his own meals one or twice a day, washed dishes three or four times a week and did some vacuuming. (AR 352-353). He indicated that he dusted about once a week, helped with doing the laundry about once a week and went to the grocery store about once a month. (AR 354). He testified that he would visit with his wife's children about once a month, went fishing about twice a month, did a little gardening and took care of some chickens he had at the time. (AR 355-356). He stated that he watered and cut his lawn as well. (AR 357). However, Claimant specifically testified the he could only sustain these daily activities for about 30 minutes before having to rest or take a nap. (AR 372-373). He further stated that he needed to take daily naps. (AR 372). Claimant testified that he was able to stand for only two to three hours continuously, sit for only about 30 minutes continuously, and could walk twelve blocks at one time. (AR 362-363). He also stated that he would have difficulty holding onto small objects due to his "stiff right thumb," but that he was able to pick items up and could write with a pen or pencil. (AR 364-365). It is apparent that Claimant's hearing testimony should not have reduced the persuasiveness of Dr. Schwartz's opinion since his testimony is essentially consistent with Dr. Schwartz's findings.

Based on the foregoing, the undersigned finds that the reasoning provided by the ALJ for rejecting Dr. Schwartz's opinions is unfounded and not legitimate.

### 2. Dr. England

Dr. England examined Claimant on November 6, 1997. (AR 225-227). Claimant reported low back pain stemming from a 1992 work-related injury and neck pain which began in 1995. (AR 225). Claimant indicated he had been diagnosed with arthritis of his back and degenerative disc disease in his cervical spine. (AR 225). Claimant complained of constant dull aching pain in his

16

1   back, that becomes sharp and more intense.  (AR 225).  He indicated there was radiation down his

2   right leg and a constant numb sensation on the lateral aspect of his right thigh.  (AR 225).  The back

3   pain is worse with activity requiring him to bend, lift, push, pull or carry, but gets better with rest,

4   stopping activity, medication, heat, lying down and getting off his feet.  (AR 225).  Claimant reported

5   he could sit, stand and walk for 30 minutes each at one time.  (AR 225).

6         Upon examination, Dr. England noted Claimant's dorsal lumbar spine had right and left

7   lateral bending, extension, and forward flexion 70% of normal.  (AR 226).  Claimant's upper and

8   lower extremities were found to have normal muscle strength with no abnormalities noted.  (AR 226-

9   227).  Claimant's upper and lower extremities and cervical spine were found to have normal ranges of

10   motion.  (AR 226-227).  Dr. England diagnosed Claimant with degenerative disc disease of the

11   lumbar spine, probably at multiple levels, degenerative disc disease at the cervical spine, probably at

12   multiple levels and chronic neck and low back pain.  (AR 226-227).  Based on the history and

13   physical examination, Dr. England opined that Claimant could occasionally lift 30 to 40 pounds and

14   frequently lift 10 to 20 pounds, stand and walk for three to four hours intermittently in an eight-hour

15   workday and sit for three to four hours intermittently in an eight-hour workday.  (AR 227).  He found

16   that Claimant could operate hand and foot controls, occasionally climb, kneel, crawl, etc., and have

17   no problems with heat, cold, wet, fumes, etc.  (AR 227).

18         The ALJ indicated that Dr. England's opinion was not fully persuasive because he appeared to

19   give undue weight to Claimant's subjective complaints of back problems, given the minimal objective

20   evidence of spinal problems, and he failed to discuss any limitations related to Claimant's right

21   thumb.  (AR 333).

22         Dr. England's report contains sufficient findings supporting his opinion, including the finding

23   of a reduced range of motion in Claimant's dorsal lumbar spine.  As noted above, the Dr. England's

24   examination revealed that Claimant's dorsal lumbar spine had right and left lateral bending,

25   extension, and forward flexion 70% of normal.  (AR 226).  Dr. Schwartz's examination is also

26   consistent with Dr. England's assessed limitations.  As indicated above, Dr. Schwartz noted

27   tenderness and spasm of the left paracervical and trapezius musculature (AR 213), tenderness and

28   spasm of the right paralumbar region and tenderness of the lumbosacral area (AR 217), and pain in

the lower back, marked at the right paralumbar area with motion to the left (AR 217). Dr. Schwartz also noted increased right lower back pain when Claimant walks on heels and toes. (AR 217). Moreover, x-rays dated May 28, 1996, demonstrated that Claimant had a marked degenerative change and spondylosis at the C5-6 level of the cervical spine, and x-rays of the lumbar spine, taken on January 25, 1996, were read as demonstrating minimal retroscoliosis with concavity to the left, with minimal osteoporosis and mild hypertrophic degenerative changes of the lumbar vertebral body margins. (AR 220). The findings of an MRI of the lumbar spine also revealed minimal broad-based annular disc bulges at L3-4, L4-5 and L5-S1, without evidence of focal disc herniation or spinal stenosis. (AR 208). Accordingly, contrary to the ALJ's findings, Dr. England's medical report was sufficiently supported by his own findings as well as other objective evidence of record.

With regard to Dr. England's failure to discuss any limitations related to Claimant's right thumb, it is apparent that Claimant did not disclose this impairment to Dr. England at the time of the examination. (AR 225). Claimant's complaints to Dr. England were of low back pain, resulting from a 1992 work-related injury, and neck pain which began in about 1995, with no mention of his right thumb impairment. (AR 225). Dr. England's examination was thus limited to restrictions stemming from pain in Claimant's low back and neck. Since Dr. England was not made aware of Claimant's right thumb impairment, it is unreasonable to discount his opinion for failing to discuss limitations related to such impairment. Moreover, such rationale did not lead the ALJ to completely reject the finding of the state agency nonexamining physicians who opined that Claimant had an unlimited ability to push and/or pull with his upper and lower extremities and had no manipulative limitations. (AR 333, 759-762). Although the ALJ found that objective evidence supported some loss of function as to Claimant's manipulative ability, the ALJ did not elect to reject the entire medical report of the nonexamining physicians.

Based on the foregoing, the undersigned finds that the reasoning provided by the ALJ for rejecting Dr. England's findings is also unfounded and not legitimate.

**3. Dr. Sharma**

Dr. Sharma examined Claimant on April 21, 2001. (AR 745-749). Claimant reported low back pain with occasional radiation to the lower extremities and intermittent numbness in the lower

1   extremities, neck pain with occasional radiation to the upper extremities, left knee pain, a history of

2   hypertension, chest pain, right thumb pain and a partial amputation of the left ring finger.  (AR 745-

3   746).  Claimant indicated a worsening of his low back pain when he stands, walks, lifts, bends, or sits

4   in one position for an extended period of time, a worsening of his neck pain when he bends his neck

5   or lifts, and a worsening of his knee pain when he bears weight on his lower extremity.  (AR 745).

6   He reported that he has stiffness in his right thumb and when he lifts something with his right hand,

7   he has pain in the right thumb.  (AR 746).

8          Upon examination, Dr. Sharma noted tenderness to palpation of the cervical spine and

9   paraspinal areas with pain on forward flexion from chin to chest and tenderness to palpation of the

10  lumbar spine and paraspinal areas with pain on forward flexion at 60 degrees and on extension at 20

11  degrees.  (AR 747-748).  Dr. Sharma found Claimant had a full range of motion of the shoulders,

12  elbows and wrists bilaterally and a full range of motion of the hips, right knee, and both ankles.  (AR

13  748).  However, Dr. Sharma also noted Claimant has pain at the interphalangeal joint of the right

14  thumb and cannot completely flex the thumb at the interphalangeal joint, partial amputation of the left

15  ring finger, and pain and crepitation with full flexion of the left knee, which is secondary to

16  degenerative joint disease.  (AR 748-749).

17         Based on the examination and her observations, Dr. Sharma opined that Claimant should be

18  limited to lifting 10 pounds frequently and 20 pounds occasionally, bending and stooping only

19  occasionally, and standing and walking six hours per day with normal breaks.  (AR 749).  Dr. Sharma

20  also determined that Claimant has limitations in fingering objects because of right thumb pain and

21  partial amputation of the left index finger.  (AR 749).

22         The ALJ found Dr. Sharma's opinion with respect to Claimant's fingering limitations to be

23  persuasive since it was supported by objective evidence.  (AR 333).  However, the ALJ partially

24  discounted her opinion about Claimant's back because she did not examine and note descriptions of

25  Claimant's back or his entire right upper extremity but only examined and noted descriptions of

26  Claimant's neck in assessing lifting and carrying capacity.  (AR 333).

27         The ALJ's rationale to partially discount Dr. Sharma's opinion is without merit.  Dr. Sharma

28  did, in fact, examine and note finding regarding Claimant's back and upper extremity area, in addition

19

to Claimant's neck. (AR 747-748). As noted above, Dr. Sharma found tenderness to palpation of the cervical spine and paraspinal areas with pain on forward flexion from chin to chest **and** tenderness to palpation of the lumbar spine and paraspinal areas with pain on forward flexion at 60 degrees and on extension at 20 degrees. (AR 747-748). In addition, Dr. Sharma did not limit her opinion regarding Claimant's ability to lift and carry to findings related solely to Claimant's neck or right thumb, but rather based her assessment on the entire physical examination and her observations. (AR 749). Moreover, due to Dr. Sharma's findings of limited use of Claimant's dominant hand, of which the ALJ found persuasive (AR 333), in addition to Dr. Sharma's findings regarding Claimant's back and neck, it is reasonable to assume such limitations would support lifting restrictions as well. Dr. Sharma's findings regarding Claimant's thumb limitations is also consistent with Dr. Schwartz's medical reports, and her finding regarding Claimant's lifting restrictions is essentially consistent with Dr. England's opinion. Accordingly, contrary to the ALJ's rationale, Dr. Sharma's opinion was well supported and should not have been rejected.

The opinions of the three examining physicians support a finding that Claimant would be incapable of performing medium exertion work, work which requires lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. 20 C.F.R. § 404.1567(c). As determined above, the ALJ's reasoning for rejecting the opinions of each of these medical professionals is invalid. See, supra. The **only** support for rejecting their opinions and finding that Claimant retains the physical RFC to perform the full range of medium exertion work lies with the check-box opinions of nonexamining state agency physicians. As noted above, the Ninth Circuit has held that "[t]he opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." Lester, 81 F.3d at 830. Here, the ALJ has failed to provide any evidence, other than the opinions of the nonexamining medical advisors to support his physical RFC determination. The nonexamining physician opinions are contrary to the weight of the evidence of record, including the opinions of three examining physicians. Accordingly, the ALJ failure to give legitimate reasoning, supported by substantial evidence, for rejecting the opinions of Drs. Schwartz, England and Sharma, and the ALJ's rejection of the examining physician opinions was thus erroneous, and the ALJ's

1  physical RFC determination, that Claimant has the RFC to perform a full range of medium duty work,

2  is not based on substantial record evidence.

3       When it is determined that the Commissioner's decision to deny a claimant disability benefits

4  was not supported by substantial evidence, the Court has the discretion to remand the case for

5  additional evidence and findings or to award benefits.  Smolen v. Chater, 80 F.3d 1273, 1292 (9th

6  Cir. 1996).  The Court may award benefits if the record is fully developed and further administrative

7  proceedings would serve no useful purpose.  Id.  Remand for the payment of benefits is required

8  where "(1) the ALJ . . . failed to provide legally sufficient reasons for rejecting [the] evidence, (2)

9  there are no outstanding issues that must be resolved before a determination of disability can be made,

10 and (3) it is clear from the evidence that the ALJ would be required to find the claimant disabled were

11 such evidence credited."  Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir. 2000).

12      As noted above, the ALJ failed to give specific and legitimate reasons, supported by

13 substantial evidence, for rejecting the opinions of Drs. Schwartz, England and Sharma.  Supra.  When

14 the Commissioner fails to provide adequate reasons for rejecting the opinion of a treating or

15 examining physician, that physician's opinion is credited as a matter of law.  Lester, 81 F.3d at 834.

16 The opinions of Drs. Schwartz, England and Sharma regarding Claimant's physical residual

17 functional capacity are thus credited.  Dr. Schwartz found that Claimant had lost 25 percent of his

18 pre-injury capacity for lifting, carrying, pushing, pulling, grasping, pinching, twisting, and other

19 comparable activities with regards to his right upper extremity.  (AR 221).  Dr. England concluded

20 that Claimant could occasionally lift 30 to 40 pounds and frequently lift 10 to 20 pounds, stand and

21 walk for three to four hours intermittently in an eight-hour workday and sit for three to four hours

22 intermittently in an eight-hour workday.  (AR 227).  Dr. Sharma determined that Claimant should be

23 limited to lifting 10 pounds frequently and 20 pounds occasionally, bending and stooping only

24 occasionally, and standing and walking six hours per day with normal breaks, and that Claimant has

25 limitations in fingering objects.  (AR 749).  Accordingly, in light of their credited opinions, the

26 undersigned finds that Claimant retains the physical RFC to perform no greater than light exertional

27 level work, or work involving lifting no more than 20 pounds at a time with frequent lifting or

28 carrying of objects weighing up to 10 pounds.  20 C.F.R. § 404.1567(b).

21

1  **B.  Grid Rule 202.06**

2      Social Security Ruling ("SSR") 82-61 provides that, pursuant to 20 C.F.R. §§ 404.1520(e) and

3  416.920(e), a claimant will be found not disabled when it is determined that he retains the RFC to

4  perform either the actual functional demands and job duties of a particular past relevant job, or the

5  functional demands and job duties of the occupation as generally required by employers throughout

6  the national economy.  SSR 82-61.  "If a claimant shows that he or she cannot return to his or her

7  previous job, the burden of proof shifts to the Secretary to show that the claimant can do other kinds

8  of work."  Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir.1988).  The Secretary must show that the

9  claimant can perform other types of substantial, gainful work that exists in the national economy;

10  specific reference should be made to realistic job opportunities.  Sample v. Schweiker, 694 F.2d 639,

11  643 (9th Cir. 1982).

12      It is undisputed that Claimant is incapable of performing his past relevant work as an oil field

13  equipment mechanic.  (AR 333).  Furthermore, a review of the record reveals that Claimant, with the

14  limitations found by the above examining medical professionals, is not able to perform other types of

15  substantial, gainful work that exists in the national economy.

16      Grid Rule 202.06 provides support for the ruling that a remand for additional proceedings for

17  a step five analysis and determination is not necessary in this case.  Application of the Grids, taking

18  into consideration the credited physician opinions that result in limiting Claimant to light exertional

19  level work, directs a finding that Claimant is disabled.  Grid Rule 202.06 directs that an individual is

20  disabled if he or she is limited to light work, is of advanced age (age 55 and older), is a high school

21  graduate or more and has previous work experience which is skilled or semi-skilled and the skills are

22  not transferrable.  During the relevant time period, Claimant was of advanced age (AR 344, 325-326),

23  he completed high school in 1954 and received one year of vocational training in oil well drilling and

24  engineering, with no recent training or education (AR 115, 134, 344-345), and his past work, as

25  indicated by the vocational expert in this case, lacked transferrable skills (AR 384).  Accordingly, in

26  the case at hand, the application of Grid Rule 202.06 results in a finding that Claimant is disabled.

27  ///

28  ///

22

1   The issue of whether Claimant is capable of performing other work is resolved by applying

2   Grid Rule 202.06 which directs a finding that Claimant is disabled.  Claimant is therefore disabled

3   within the meaning of the Act, and further development is not necessary for a proper determination to

4   be made in this case.  The undersigned concludes that a remand for additional proceedings would

5   only delay an award of benefits in this case.

6   It is significant to note that the ALJ's determination that Claimant has only slight limitations

7   on fine and gross manipulation of his right dominant hand (AR 333) appears to be contradicted by the

8   credited opinions of Claimant's examining physicians, whose opinions generally support a moderate

9   limitation in fine manipulative ability with the right dominant feature.  Supra.  At the remand hearing,

10  the vocational expert testified that an individual with Claimant's attributes, who was able to perform

11  medium or light exertion work, would have a 100 percent erosion of the job market she previously

12  noted, if the individual was moderately limited in fine manipulative ability with the right dominant

13  feature.[3]  (AR 387, 389).  Accordingly, vocational expert testimony additionally supports a finding, at

14  step five of the sequential evaluation process, that there is no other jobs available in the national

15  economy for which Claimant could perform.  Vocational expert testimony and application of the

16  Grids in this case demonstrates that Claimant is disabled within the meaning of the Act.

17  **CONCLUSION**

18  For the reasons outlined above, the undersigned concludes that the Commissioner's decision

19  to deny Claimant disability benefits was not supported by substantial evidence in the record.  The

20  record in this case is fully developed and a remand for further administrative proceedings would serve

21  no useful purpose.  Therefore, a remand for the payment of benefits is appropriate.  The undersigned

22  thus concludes that the decision of the ALJ be reversed and the case be remanded to the

23  Commissioner for the award of benefits.

24

25

26  [3]The vocational expert identified the jobs of dishwasher, car washer and hand packager, as positions available for the hypothetical individual if he was capable of performing medium exertion work and the jobs of small parts assembler, hotel/motel housekeeper and hand presser, as positions available for the hypothetical individual if he was

27  capable of performing light exertion work.  (Ar 385-389).  The vocational expert testified their would be a 40 percent erosion of these jobs if the individual was slightly limited in fine and gross manipulation with the right dominant feature

28  and a 100 percent erosion of these jobs if the individual was moderately limited in fine and gross manipulation with the right dominant feature. (AR 387, 389).

1    Accordingly, it IS ORDERED that

2        1.    Claimant's social security complaint IS GRANTED;

3        2.    The matter IS REMANDED to the Commissioner for the payment of benefits; and

4        3.    Judgment BE ENTERED for Claimant/Plaintiff Robert Ellis and against Defendant Jo

5    Anne B. Barnhart.

6

7    IT IS SO ORDERED.

8    **Dated:    July 13, 2005**                    _____/s/ Theresa A. Goldner_____
     j6eb3d                                         UNITED STATES MAGISTRATE JUDGE
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28